IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL STEVEN TEAGUE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 8129 |
| | ) |
| HENRY V. TEAGUE, JR., | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Daniel Steven Teague ("Daniel") has sued his brother Henry V. Teague, Jr. ("Henry"), charging him with breaching an agreement ("Assignment Agreement") between them relating to limited partnership Arlington Associates ("Arlington"). Henry has responded with a motion to dismiss the action under Fed. R. Civ. P. ("Rule") 12(b)(6), and the litigants have briefed the matter. For the reasons stated here, the motion is granted as to all claims antedating November 15, 2001.

**Rule 12(b)(6) Standards**

Under Rule 12(b)(6) a party may move for dismissal of a complaint because of its "failure to state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007) repudiated, as overly broad, the half-century-old Rule 12(b)(6) formulation announced in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Twombly, 550 U.S. at 570 held that to survive a Rule 12(b)(6) motion a complaint must provide "only enough facts to state a claim to relief that is plausible on its face" (550 U.S. at 570). Or put otherwise, "[f]actual allegations must be enough to raise a right of relief above the speculative level" (id. at 555). Since then Erickson v. Pardus, 551 U.S. 89 (2007)(per curiam) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) have provided further Supreme Court enlightenment on the issue.

Familiar Rule 12(b)(6) principles--still operative under the new pleading regime--require this Court to accept as true all of Daniel's well-pleaded factual allegations, with all reasonable inferences drawn in his favor (Christensen v. County of Boone, 483 F.3d 454, 457 (7th Cir. 2007)(per curiam)). What follows in this opinion adheres to those principles, with allegations in the Complaint cited simply "¶--."

## Background

In December 1983 Henry formed Arlington with a number of other general and limited partners (¶8). Arlington obtained a loan for the purchase, construction and commercial development of real estate in Arlington Heights, Illinois (the "Development"), which loan was secured by a mortgage on the Development (¶¶9-10). In August 1986 Daniel made a capital contribution in exchange for a 10% interest in Arlington, making him a special limited partner

2

entitled to a 10% share of Arlington's profits, losses and distributions (¶¶12-13).[1]

In December 1991 Henry paid Daniel's share of an Arlington capital call, in exchange for which Daniel transferred his 10% interest in Arlington back to Henry pursuant to the Assignment Agreement (id. ¶17). Under the Assignment Agreement Henry committed to pay Daniel (a) 10% of the net distributable cash flow from the Development and (b) 10% of the net future proceeds of any sale or refinance of the Development, but only to the extent that any such funds remained after the payment of all associated liabilities and costs and after the repayment of certain advances made by Arlington partners (¶¶18-20). Daniel was also entitled to receive upon request any documents necessary to "effectuate or evidence" the provisions of the Assignment Agreement (¶21).

In October 2002 Arlington refinanced its mortgage on the Development, resulting in a substantial payment to Arlington's

---

[1] Henry disputes that Daniel was ever a partner and claims that all financial contributions from Daniel were unsecured loans. For current purposes this Court accepts Daniel's well-pleaded facts as true (Christensen, 483 F.3d at 457) and therefore treats Daniel as though he had been a special limited partner as of August 1986. That earlier status seems irrelevant, though, for Daniel's 1991 transfer of his interest to Henry (described in the next paragraph of the text) would appear to have spelled the end of any interest in the partnership itself on Daniel's part, leaving him with a contractual right to receive from Henry--not from the partnership--payments of money if the conditions of the Assignment Agreement were satisfied.

majority partner, Northwestern National Life Insurance Company (¶¶31-32). Then in February 2003 Arlington sold the Development and received $1,791,340.89 in cash from the sale (¶¶33-34). Between December 1991 and August 2011 Daniel made several oral and written requests to Henry for information and documents regarding distributions to Arlington's partners and whether the Development had been sold, but Henry failed or refused to provide him with any response (¶¶43-44). Daniel first learned of the 2003 sale of the Development in March 2007 (¶47), and he filed this action on November 15, 2011.

On December 12, 2011 Henry moved to dismiss the action on several grounds, including a contention that Daniel's breach of contract claims arising before November 15, 2001 are barred by the ten year statute of limitations period applicable to written contracts. This Court denied the other grounds for dismissal and limited further briefing to the statute of limitations issue.

## Statute of Limitations

Under Illinois law actions for breach of written contracts are subject to a ten year statute of limitations (735 ILCS 5/13-206).[2] In that respect Hi-Lite Prods. Co. v. Am. Home Prods.

---

[2] Although Henry's alleged failure to account for certain funds or provide financial information to Daniel is one of the ways in which Daniel claims Henry breached the Assignment Agreement, that fact does not magically turn his breach of contract claim into an accounting claim. Henry's argument for application of the five-year limitations period applicable to accounting claims is unpersuasive.

4

Corp., 11 F.3d 1402, 1408-09 (7th Cir. 1993)(citations omitted) teaches:

> Contracts requiring continuous performance are capable of being partially breached on numerous occasions. Each partial breach is actionable and is subject to its own accrual date and own limitation period.

Several other refinements define the kickoff date for the ten year limitations period. First, that period "begins to run once a plaintiff has knowledge that would lead a reasonable person to investigate the possibility that his legal rights had been infringed" (Kovacs v. United States, 614 F.3d 666, 674 (7th Cir. 2010), quoting Fayoade v. Spratte, 284 Fed. App'x 345, 347 (7th Cir. 2008)). It is unnecessary for the plaintiff to understand that he is legally entitled to recover for his injury (id.). Relatedly, Illinois courts impose an affirmative duty on would-be litigants "to investigate when all the circumstances, evaluated in their totality, reasonably require, as a matter of prudence, that an investigation be undertaken" (Teamsters Local 282 Pension Trust Fund v. Angelos, 839 F.2d 366, 371 (7th Cir. 1988)).

As already stated, Daniel alleges that Henry's nonresponsiveness to his requests for documents and information spanned the 20 year period from 1991 to 2011 (¶¶43-44). In addition he asserts that Henry further breached the Assignment Agreement by failing to pay Daniel (a) 10% of Arlington's distributable cash flow from 1991 to 2003, (b) 10% of the net

5

distributable cash generated from Arlington's refinancing and (c) 10% of the net proceeds generated from the 2003 sale of the Development (id. ¶51). Despite two full decades of claimed stonewalling (and perhaps also some breaches of payment obligations) on Henry's part, Daniel sat on his rights and did not bring suit until late 2011. Even if it is accepted that Daniel did not learn of those developments[3] until well after their occurrence, he certainly was put on inquiry notice as to his possible injuries long ago. Indeed, on that score it is unnecessary to go beyond his own recognition of that fact--after all, he did make repeated inquiries.

On that score Daniel's attempted reliance on the decision in Newell v. Newell, 406 Ill. App. 3d 1046, 942 N.E.2d 776 (3d Dist. 2011) is totally without traction. There the plaintiff ("Jarred") was involved in a car accident at the age of six, and his mother Ruth deposited the settlement proceeds from a related lawsuit into a guardianship account for Jarred's benefit (id. at 1047-48, 942 N.E.2d at 778). During Jarred's childhood, Ruth withdrew nearly all the funds from the account without court order, telling Jarred that he could access the account only when he turned 18 (id. at 1048, 942 N.E.2d at 778). When Jarred then neared his 18th birthday and inquired about the account, Ruth told him she had changed the age to obtain the funds from 18 to

---

[3] Bad pun intended.

6

21 (id.). Again when Jarred attained age 21, Ruth told him that the age to obtain the funds was now 23, when he would graduate from college (id.). When Jarred then turned 23 and his mother remained evasive about the account, he began investigating and filed a complaint less than two years later (id., 942 N.E.2d at 779). Under the circumstances the Newell court applied the Illinois discovery rule to toll the statute of limitations and remanded the case for the trial court to consider when Jarred should reasonably have known of his injury (id. at 1053, 942 N.E.2d at 782).

Simply to recite that scenario is to confirm beyond cavil the absurdity of viewing it as parallel--or indeed even reasonably similar--to the situation here. Just contrast the levels of maturity (or lack of it) of the two plaintiffs, or the mother-child relationship in Newell as against this case's brother-brother relationship between two adult investors of their own funds in a major real estate development, or the provision of the mother's seemingly plausible responses (at least to a minor child) in Newell as against Henry's repeated stonewalling here over a full decade between 1991 and 2001.

In sum, each refusal or failure to provide documents on Henry's part constituted another breach of the Assignment Agreement and should have prompted a reasonable person to take action, yet Daniel did nothing to address those breaches by

seeking a judicial determination of whether he was entitled to a payout of funds derived from Arlington. And indeed that complaisant pattern continued well after Daniel had discovered the 2003 sale of the Development, for even then he did not file the Complaint for four more years. Surely he cannot now claim that the statute of limitations should be tolled to permit recovery for the first decade of the 20 year period since 1991.

It is true that the Complaint is silent as to any allegation of injury stemming from Henry's alleged breaches--that is, any assertion of Daniel's claimed entitlement to a distribution or distributions under the formulas set out in the Assignment Agreement. But that omission cannot be labeled as noncompliant with the element of plausibility demanded by the Twombly-Iqbal canon, for it has been caused by the very breaches of Henry's obligation to provide information that are the gravamen of Daniel's Complaint.

To rephrase the last point a bit, on Daniel's allegations it was in the 1990s that Henry first breached his obligation under the Assignment Agreement to provide information in response to Daniel's request (¶21), and by definition Daniel necessarily knew of that breach when it occurred. There is no excuse for his failure to take action at that time or thereafter, and that inaction bars any claim that antedates November 15, 2001.

To be sure, Daniel did not know (and does not yet know)

whether the ongoing breaches by Henry had financial consequences--whether there were also breaches of Henry's obligation to make payments. But any possible injury in that respect would flow directly from Daniel's own delinquency in seeking enforcement, so that if it were to turn out that payments were due and owing for that time-outlawed period Daniel could not bootstrap himself into the recovery of such amounts.

## Conclusion

As a matter of law the Complaint establishes that Daniel failed to pursue the possibility that his rights had been infringed long after a reasonable person would have taken action. Hence the applicable ten year limitations period was not tolled, and the Complaint will be limited to the consequences of breaches occurring on or after November 15, 2001.[4] All earlier claims are dismissed, and Henry is ordered to answer the surviving portion of the Complaint on or before March 26, 2012. Finally, a status hearing is set for 9 a.m. March 30, 2012 to discuss further proceedings in the case.

_____
Milton I. Shadur
Senior United States District Judge

Date:  March 14, 2012

---

[4] At this early pleading stage, no findings are of course made or implied as to the possibility that factual development could also trigger a laches defense--delay plus prejudice--as to some part of the period not barred by limitations as such.